# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MARK W. DARRAGH,**

          **Plaintiff,**

**v.**                                                  **Case No:   6:14-cv-104-Orl-28KRS**

**NATIONWIDE MUTUAL FIRE**
**INSURANCE COMPANY,**

          **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION TO REMAND (Doc. No. 9)** |
| **FILED:** | **February 17, 2014** |

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR ATTORNEY FEES (Doc. No. 10)** |
| **FILED:** | **February 17, 2014** |

## I.    PROCEDURAL BACKGROUND.

      As discussed in more detail below, in 2006, Plaintiff, Mark W. Darragh ("Darragh"), filed a state court lawsuit to recover uninsured motorist insurance ("UM") benefits against his insurer, Defendant, Nationwide Mutual Fire Insurance Company ("Nationwide").   Doc. No. 9 at 2; Doc. No. 12 at 1.   On January 9, 2014, the state court allowed Darragh to amend his complaint to add a statutory bad faith claim against Nationwide.   Doc. No. 1 at 2; Doc. No. 1-2 at 5.   Nationwide

filed a Notice of Removal on January 22, 2014.   Doc. No. 1.   With its Notice of Removal,

Nationwide filed copies of the following:

- State court's Final Judgment on Darragh's UM claim, dated September 14, 2010 (Doc. No. 1-2 at 1-2);

- Darragh's motion for leave to file an amended complaint in the state court action, dated October 4, 2013 (*Id.* at 3-4);

- State court's order granting Darragh's motion for leave to file an amended complaint in the state court action, dated January 9, 2014 (*Id.* at 5);

- Darragh's First Amended Complaint in the state court action (*Id.* at 6-11)[1];

- Jury verdict form from the trial of Darragh's UM claim (*Id.* at 12-13);

- Docket sheet for the state court action (Doc. No. 1-3).

Darragh filed a motion to remand (Doc. No. 9) and a request for attorneys' fees incurred in

connection with the motion to remand (Doc. No. 10) on February 17, 2014.   In addition to filing

duplicate copies of some of the documents attached to Nationwide's Notice of Removal, Darragh

filed copies of the following with his motion to remand:

- June 16, 2004, letter from Darragh's counsel to Nationwide demanding $100,000 to settle Darragh's claim (Doc. No. 9-2);

- June 29, 2006, letter from Nationwide to Darragh's counsel offering $2,500 to settle Darragh's claim (Doc. No. 9-3);

- July 7, 2006, letter from Darragh's counsel to Nationwide demanding $200,000 to settle Darragh's claim (Doc. No. 9-4);

- July 7, 2006, Civil Remedy Notice of Insurer Violation form, alleging that Nationwide failed to attempt to settle Darragh's claim in good faith (Doc. No. 9-5);

- Darragh's October 2008 Proposal for Settlement/Demand for Judgment from the state court action, in which Darragh demanded $200,000 to settle his claim (Doc. No. 9-6);

- June 8, 2012, opinion from the Florida Fifth District Court of Appeal ("DCA") regarding Darragh's state court lawsuit (Doc. No. 9-9);

---

[1] This document is also in the record as Doc. No. 2.

- June 18, 2013, Supreme Court of Florida order denying a petition for review (Doc. No. 9-10);

- Nationwide's brief and reply brief to the Fifth DCA (Doc. Nos. 9-19 and 9-20);

- Transcript of January 9, 2014, hearing in the state court lawsuit (Doc. No. 9-21).[2]

Darragh also filed copies of several unpublished court opinions with his motion to remand and his motion for attorneys' fees.   *See* Doc. Nos. 9-11 through 9-18; Doc. No. 10-1; Doc. No. 11.

Nationwide responded to Darragh's motions on March 3, 2014.   Doc. Nos. 12, 14.   With its response to the motion to remand, it filed copies of the following:

- Transcript of September 14, 2010, hearing in the state court lawsuit (Doc. No. 12-5);

- Nationwide's response to Darragh's motion for leave to file an amended complaint in the state court lawsuit (Doc. No. 12-6);

Nationwide also filed copies of several unpublished court opinions with its responses.   *See* Doc. Nos. 12-1 through 12-4.

With leave of the Court, Darragh filed a reply in support of his motion to remand. Doc. No. 19.   He attached a copy of a motion to dismiss that Nationwide filed in the state court action following its Notice of Removal (Doc. No. 19-2) and a copy of an unpublished court opinion (Doc. No. 19-1).

Darragh's motions are now ripe for decision.

## II.    RELEVANT FACTS.

Darragh and Nationwide were parties to an insurance contract that provided for UM benefits.   Doc. No. 2 ¶ 5.   On April 12, 2004, Darragh was injured in a motor vehicle accident. *Id.* ¶¶ 2-4.   With Nationwide's consent, Darragh settled with the other driver for her maximum insurance coverage of $25,000.   *Id.* ¶ 7.   Thereafter, Darragh made a claim to Nationwide for

---

[2] Portions of this transcript are also in the record as an attachment to Darragh's motion for attorneys' fees (Doc. No. 10-2).

UM benefits.   On June 14, 2006, his counsel wrote to Nationwide demanding $100,000 to settle

his claim.   In the letter, Darragh's counsel detailed Darragh's injuries and stated that Darragh had

already incurred medical expenses and out-of-pocket expenses in excess of $22,000.   Darragh's

counsel also stated that, due to his injuries, Darragh would not be able to continue his enlistment

in the armed forces, thereby depriving him of at least $320,000 in retirement benefits.

Doc. No. 9-2.   On July 7, 2006, Darragh's counsel increased Darragh's settlement demand to

$200,000 based on his updated understanding that Darragh's insurance policy provided $200,000

in UM coverage.   Doc. No. 9-4.   On the same day, Darragh filed a Civil Remedy Notice of

Insurer Violation, alleging that Nationwide failed to attempt to settle his claim in good faith when

it refused to pay the $200,000 UM policy limits to resolve his case.   Doc. No. 9-5.

   Nationwide did not tender the UM policy limits to Darragh, so, on December 22, 2006,

Darragh filed a lawsuit against Nationwide in the Circuit Court of the Eighteenth Judicial Circuit,

in and for Seminole County ("the State Court Action").   Doc. No. 9 at 2; Doc. No. 12 at 1.   His

one-count complaint sought to recover UM benefits from Nationwide in relation to the 2004

accident.   Doc. No. 9 at 2; Doc. No. 12 at 1.

   The State Court Action proceeded to trial in July 2009.   The jury returned a verdict in

Darragh's favor in a total amount of $3,994,461.63.   Doc. No. 1-2 at 12-13.   On September 14,

2010, the judge in the State Court Action entered a Final Judgment in Darragh's favor and against

Nationwide for the UM policy limits of $200,000 notwithstanding the amount of the jury verdict.

*Id.* at 1-2.   The Final Judgment stated that the parties stipulated that, "but for the limitations

imposed by the subject insurance policy, the Plaintiff would have been able to recover a judgment

in the amount of $3,922,047.20 (which is the verdict minus various set-offs plus credit for

premiums paid)."   *Id.*   The Final Judgment also stated that the state court reserved jurisdiction

"to permit the [Plaintiff] to amend his Complaint to seek and litigate the issue of bad faith damages from the Defendant due to such jury verdict being in excess of policy limits."   *Id.* at 1.

Nationwide appealed the Final Judgment to the Fifth DCA.   On June 8, 2012, the Fifth DCA affirmed the jury's verdict and the trial court's Final Judgment in all respects, except for future economic losses (which amounted to approximately $1.5 million of the jury's verdict). *Nationwide Mut. Fire Ins. Co. v. Darragh*, 95 So. 3d 897, 898-901 (Fla. 5th Dist. Ct. App. 2012). After the Florida Supreme Court denied a petition for review (Doc. No. 9-10), the case returned to the trial court.   Re-trial of the future economic loss issue has been scheduled by the Circuit Court. *See* Doc. No. 1-3 at 1.

On October 4, 2013, Darragh filed a motion to amend his complaint in the State Court Action, asking that he be permitted to add a count for statutory bad faith against Nationwide pursuant to Fla. Stat. § 624.155.   Doc. No. 1-2 at 3-4.   On January 9, 2014, following a hearing (Doc. No. 9-21), the state court judge allowed Darragh to file his amended complaint. Doc. No. 1-2 at 5.   The amended complaint included two counts – the original UM insurance claim and a second claim for bad faith.   Doc. No. 2.

Nationwide filed its Notice of Removal on January 22, 2014.   Doc. No. 1.

## III.   APPLICABLE LAW.

Pursuant to 28 U.S.C. § 1441(a), "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."   Removal jurisdiction exists only where the district court would have original jurisdiction over the action. 28 U.S.C. § 1441(a); *Darden v. Ford Consumer Fin. Co.*, 200 F.3d 753, 755 (11th Cir. 2000).

Pursuant to 28 U.S.C. § 1332(a), district courts have original jurisdiction over cases in which the parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . ."

"When a case is removed on the basis of diversity jurisdiction, a successful removal requires a defendant to jump through . . . procedural hoops."   *Williams v. Litton Loan Servicing, LP*, Case No. 2:10-CV-951-WKW, 2011 WL 521624, at *2 (M.D. Ala. Feb. 15, 2011). Specifically, the removing party must satisfy the "how" and "when" dictates of 28 U.S.C. § 1446. *Williams*, 2011 WL 521624, at *2 (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 756 (11th Cir. 2010)).   Darragh has put the "when" dictates of § 1446 at issue in this case.   Section 1446(b) "answers the question of *when* an action is removable," *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212 (11th Cir. 2007), and "governs the timeliness of removal in civil cases," *Pretka*, 608 F.3d at 757.[2]

Section 1446(b) is divided into three paragraphs.   Under the first paragraph, a defendant may rely on the initial pleading and file a notice of removal within thirty days after service upon the defendant.   28 U.S.C. § 1446(b)(1).   If the case as stated by the initial pleading is not removable, under the third paragraph, a defendant may file a notice of removal "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."   28 U.S.C. § 1446(b)(3).   However, a case may not be removed under the third paragraph on the basis of diversity jurisdiction "more than 1 year after commencement of

---

[2]The timeliness of removal is a procedural, instead of a jurisdictional, defect.   *Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1329 (11th Cir. 2010.

the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from moving the action."   28 U.S.C. § 1446(c)(1).

Pursuant to 28 U.S.C. § 1447(c), a motion to remand the case on the basis of any defect other than lack of subject-matter jurisdiction must be made within thirty days after the filing of the notice of removal.   In addition to the timeliness issues mentioned above, one defect that may be raised in a motion to remand is that the state court defendant has effectively waived the right to remove by litigating the state court case on the merits.   *See Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004).   A state court defendant may waive the right to remove by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in the tribunal before filing a notice of removal.   *Id.* The determination of whether the state court defendant has waived the right to remove based on active participation must be made on a case-by-case basis.   *Id.* (citing *Hill v. State Farm Mut. Auto. Ins. Co.*, 72 F. Supp. 2d 1353, 1354 (M.D. Fla. 1999)).

In all cases, removal statutes are strictly construed, and doubts should be resolved in favor of remand.   *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

Finally, § 1447(c) provides that an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

## IV.    ANALYSIS.

I discuss Darragh's motion to remand (Doc. No. 9) and his motion for attorneys' fees (Doc. No. 10) separately below.

A.      *Motion to Remand.*

1.      A Preliminary Note.

Before addressing the merits of Darragh's motion to remand, I address one preliminary

issue.   As stated above, when Nationwide filed its Notice of Removal, the operative complaint in

the State Court Action was a two-count complaint – with one count for recovery of UM insurance

benefits and one count for bad faith.   Doc. No. 2.   In its Notice of Removal, Nationwide stated

that it was petitioning the Court for removal of "the above-captioned action from the Circuit Court

of the Eighteenth Judicial Circuit in and for Seminole County, Florida" and asked that "the action

now pending against it in the Circuit Court in and for Seminole County, Florida, be removed

therefrom to this Honorable Court, and that this Court assume full jurisdiction over the cause

herein as provided by law."   Doc. No. 1 at 1, 7.   However, Nationwide also discussed at length

its position that Darragh's bad faith claim could be properly removed independent of the

underlying UM action and stated that it "may appropriately remove the bad faith claim to federal

court."   *Id.* at 5.   This formulation makes it somewhat unclear whether Nationwide intended to

attempt to remove the entire State Court Action (that is, both counts of Darragh's amended

complaint) or only the bad faith count of the amended complaint.

In its response to Darragh's motion to remand, Nationwide repeatedly asserted that it had

removed *only* Darragh's bad faith claim, not the entire State Court Action.   *See, e.g.*, Doc. No. 12

at 2, 9-10.   And, while Darragh took issue with whether Nationwide *could* appropriately remove

just the bad faith claim in his reply, he did not dispute that Nationwide had in fact attempted to do

so.   *See, e.g.*, Doc. No. 19 at 3 ("Nationwide attempts to accomplish such a bifurcation by its

removal of the statutory extracontractual claim . . . .   The reason for Nationwide's attempted

removal of the statutory claim has now become apparent . . . .").   It also appears that, since

Nationwide filed its Notice of Removal, the parties have continued to litigate the UM count in the

State Court Action and that the state court has scheduled the re-trial of the remaining damages

issue.   *See, e.g.*, Doc. No. 19-2 (Nationwide's motion to dismiss the UM count in the State Court

Action, which was filed after its Notice of Removal).[3]   Thus, it appears that the parties and the

state court are proceeding on the assumption that Nationwide has attempted to remove *only* the

bad faith count of Darragh's amended complaint, leaving the UM claim pending in state court.

Finally, I note that at least one other judge of this Court has construed a notice of removal similar

to the notice in this case as if it had attempted to remove only the bad faith claim from a pending

two-count amended complaint in state court.   *See Batchelor v. GEICO Cas. Co.*, No. 6:11-cv-

1071-Orl-31GJK (M.D. Fla. 2011) at Doc. Nos. 1 (notice of removal), 2 (amended complaint), and

21 (order on motion to remand).

    Accordingly, while not as artfully worded as it might have been,[4] I construe Nationwide's

Notice of Removal as if it were intended to attempt to effect a removal of Darragh's bad faith

claim alone.

    2.    <u>Subject-Matter Jurisdiction</u>.

    Darragh's motion to remand focuses solely on the procedural aspects of removal.   Thus, it

is appropriate to consider whether this Court has subject-matter jurisdiction over Darragh's bad

---

[3] I also take judicial notice of the docket for the State Court Action, which indicates that the parties have continued to litigate in state court and, as of the writing of this Report and Recommendation, they are scheduled to go to trial during the two-week period beginning June 16, 2014.   *See* online docket for Case No. 2006CA002655, available online at http://www.seminoleclerk.org/CivilDocket/case_detail.jsp? CaseNo=2006CA002655 (last visited April 28, 2014).

[4] I note that, in similar situations, other defendants have phrased their notices of removal to make it clear that they were attempting to remove just one count of a pending state court complaint.   *See, e.g.*, *Lahey v. State Farm Mut. Auto. Ins. Co.*, No. 8:06-cv-1949-T-27TBM, Doc. No. 1 at 5 (M.D. Fla. Oct. 20, 2006) (requesting that "the separate and independent action raised by Count VII of the Amended Complaint in the above action now pending in [state court] be removed therefrom to this Honorable Court").

faith claim.   In its Notice of Removal, Nationwide alleges that it is a citizen of Ohio for diversity purposes because it is incorporated and has its principal place of business in Ohio.   Doc. No. 1. ¶ 6.   Nationwide also alleges that Darragh is a citizen of Kentucky.   *Id.* ¶ 5.   Darragh admitted the truth of those allegations in his motion to remand.   Doc. No. 9 at 7.   Therefore, it appears to be undisputed that complete diversity of citizenship exists in this case.

In its Notice of Removal, Nationwide also alleges that the amount in controversy exceeds $75,000 because, with his bad faith claim, Darragh is seeking to recover the difference between the $200,000 judgment on the UM claim and the jury's multi-million dollar verdict.   Doc. No. 1 at 7.   As mentioned above, the Fifth DCA affirmed approximately $2.5 million of the jury's almost $4 million verdict against Nationwide.   Thus, even if the re-trial of the future economic loss issue does not result in any additional damages, Darragh could recover approximately $2.3 million above and beyond the $200,000 judgment on the UM claim if successful on his bad faith claim.   This is sufficient to meet the amount in controversy requirement.

3.   <u>Alleged Defects in Removal</u>.

Darragh argues that the bad faith claim should be remanded because Nationwide's Notice of Removal was untimely (under several different theories) and because Nationwide waived its right to removal by allegedly consenting to litigate the bad faith claim in state court.   As explained in detail, below, I recommend that the Court find that Nationwide's Notice of Removal was timely and that it did not waive its right to removal by virtue of its actions in the State Court Action.

*a.   Timeliness.*

Darragh contends that the bad faith claim should be remanded because Nationwide did not timely remove the claim.   He alleges that the removal was untimely because: (1) his original

complaint for UM benefits was removable and Nationwide failed to remove the case within thirty days of being served with that complaint; (2) if his original complaint was not removable, Nationwide's removal violates the one-year limitation of § 1446(c)(1); (3) Nationwide waived its right to removal by failing to remove within thirty days of its receipt of the September 2010 Final Judgment on Darragh's UM claim in the State Court Action; and (4) Nationwide waived its right to removal by failing to remove within thirty days of Darragh's October 4, 2013, motion to amend his complaint in the State Court Action.

As to the first two arguments, Nationwide contends that the bad faith claim was, in effect, a brand new "action" that could be separately removed under § 1446(b)(1) within thirty days of its filing.   As to the second two arguments, Nationwide contends that it timely removed the bad faith claim because it filed its Notice of Removal within thirty days of the date the state court granted Darragh's motion to amend and the date Darragh's amended complaint was filed.   I discuss the various issues raised by these arguments, below.

i.   <u>Is the bad faith claim separately removable?</u>

This case squarely presents a thorny issue raised by the confluence of Florida procedure regarding insurance bad faith litigation and the operation of the federal removal statutes.   In brief, the Florida Supreme Court has stated that a first-party claim for bad faith "'is grounded upon the legal duty to act in good faith, and is thus separate and independent of the claim arising from the contractual obligation to perform.'"   *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1235 (Fla. 2006) (quoting *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991)).   It has also concluded that a first-party action for insurance benefits against an insurer (like Darragh's UM claim in the State Court Action) does not even accrue before the conclusion of the underlying litigation for the contractual uninsured motorist

insurance benefits.  *Blanchard*, 575 So. 2d at 1291.   Although a UM claim and a bad faith claim conceptually should not be able to abide in the same lawsuit, Florida courts routinely allow this result by either: (1) allowing the plaintiff to plead the bad faith claim along with the underlying UM claim and allowing the bad faith claim to stand subject to stay or abatement; or (2) allowing the bad faith claim to be brought as an amendment to the original UM complaint, months or years after commencement of the UM lawsuit.  *See Bolen v. Ill. Nat'l Ins. Co.*, No. 6:10-cv-1280-Orl-36DAB, 2012 WL 4856811, at *5 (M.D. Fla. Aug. 28, 2012), *adopted by* 2012 WL 4856753 (M.D. Fla. Oct. 12, 2012) (collecting cases discussing this aspect of Florida law and practice).

Under this framework, when a state court allows a plaintiff to amend his original complaint, in which he sought to recover only UM benefits, to add a bad faith claim years after the initiation of litigation (as occurred in this case), a question emerges:   Is the bad faith claim – as a "separate and independent claim" – effectively a new "civil action" that can be removed separately under § 1441 and carries with it its own set of deadlines for removal pursuant to § 1446?   Or is it just a new claim in an old "action" that is subject to removal deadlines measured from the filing of the original UM complaint?   The answer to this question is determinative in this case.   If Darragh's bad faith claim is simply a new claim in the original UM action for purposes of the removal statutes, Nationwide's attempts to remove it are clearly time barred by § 1446(b)(1) (assuming the UM claim was initially removable) and § 1446(c)(1) (assuming the UM claim was not initially removable).

The Eleventh Circuit has not addressed the issue, and there is no binding authority on the question.   Federal district courts in Florida have confronted this issue in a number of different procedural contexts, and they have split on it, dividing roughly into "separately removable" and "not separately removable" lines of authority.  *Compare Batchelor v. GEICO Cas. Co.*, No. 6:11-

cv-1071-Orl-31GJK, Doc. No. 21 (M.D. Fla. Aug. 15, 2011); *Moss v. GEICO Indem. Co.*, No.

5:10-cv-104-Oc-10GRJ, Doc. No. 14 (M.D. Fla. May 24, 2010), *adopted by* Doc. No. 22 (M.D.

Fla. June 24, 2010); *Lahey v. State Farm Mut. Auto. Ins. Co.*, No. 8:06-cv-1949-T-27TBM, 2007

WL 2029334 (M.D. Fla. July 11, 2007) (all finding that a later-added bad faith claim is separately

removable) *with Barroso v. Allstate Prop. & Cas. Ins. Co.*, 958 F Supp. 2d 1344 (M.D. Fla 2013);

*Rader v. Safeco Ins. Co. of Ill.*, No. 3:12cv587/MCR/CJK, Doc. No. 24 (N.D. Fla. May 21, 2013);

*Potts v. Harvey*, No. 11-80495-CIV, 2011 WL 4637132 (S.D. Fla. Oct. 6, 2011); *Suncoast*

*Country Clubs, Inc. v. U.S. Fire Ins. Co.*, No. 8:06-cv-1238-T-23MSS, 2006 WL 2534197 (M.D.

Fla. Aug. 31, 2006) (all finding that a later-added bad faith claim is not separately removable).

    While the parties vigorously argue for the primacy of their preferred line of authority, I

note that the presiding district judge in this case has twice adopted Reports and Recommendations

that included the following language:

> Resolution of whether Defendant has a right to remove the bad faith claims and
> whether the removal was premature requires an examination of the nature of a bad
> faith claim under Florida law and the interplay between the underlying [uninsured
> motorist] claim and the bad faith claim.
>
> Not surprisingly there is no Eleventh Circuit law addressing the issue of whether a
> party may remove a bad faith claim which has been added to an underlying suit for
> UM benefits.  However, several judges in this district and a judge in the Southern
> District of Florida have addressed removal of a bad faith claim where, as here, the
> bad faith claim was included in an amended pleading filed in the underlying claim
> by the insured under the insured's UM policy.
>
> In *Lahey v. State Farm Mut. Ins. Co.*, 2007 WL 2029334 (M.D. Fla. 2007), Judge
> Whittemore concluded that the plaintiffs' bad faith claim was a separate and distinct
> cause of action from the underlying UM claim.  Because the bad faith claim was
> considered to be an independent and separate claim Judge Whittemore held that the
> defendant was entitled to remove the bad faith cause of action within 30 days of when
> it was added as a claim in the underlying case and that the Defendant was not
> precluded from filing it because the case was removed more than one year after the
> original UM claim was filed.  Judge Lazzara in *Parks v. State Farm Mutual*
> *Automobile Ins. Co.*, [8:06-Cv-811-T-26MSS (M.D. Fla. June 20, 2006),] reached a
> similar result as Judge Whittemore in concluding that the one year period for removal
> provided for in 28 U.S.C. § 1446(b) was triggered when the bad faith claim was

added to the case and not when the original UM claim was filed.   Judge Hurley in the Southern District of Florida in *McCreery v. State Farm Mutual Insurance Co.*, [Case No. 07-80489-Civ-Hurley/Hopkins (S.D. Fla. Sept. 4, 2007)], however, reached the opposite result and concluded that the bad faith claim was not a new action, but merely a new claim in the same action that had been pending and, therefore, the one year period to remove the action began when the original UM claim was filed and not when the bad faith claim was added.

While the Court agrees with the views of Judges Whittemore and Lazzara that a bad faith claim is separate and independent from the underlying UM claim, and is therefore removable, there is one critical distinction between this case and *Lahey* and *Parks*.   In the instant case—unlike the posture of *Lahey* and *Parks*—the state court judge has not yet entered a final judgment.   This distinction is important because under Florida law a bad faith claim does not accrue until the conclusion of the underlying contract claim. . . .   This means that until a final judgment is entered the bad faith claim does not exist and, therefore, there is nothing to remove even though a bad faith claim may be considered a separate and independent claim that is subject to removal separate from the underlying claim.   However, once a final judgment has been entered by the state judge then both liability and damages will have been established both of which are necessary to prosecute a claim against an insurer for bad faith. . . .

Accordingly, because the Court concludes that Plaintiff's bad faith cause of action has not yet accrued—and there is no ripe claim for this Court to adjudicate— [Defendant's] removal of the bad faith cause of action was premature, and, therefore, Plaintiff's Motion to Remand is due to be granted.

\*\*\*

Defendant is not without recourse, however.   Assuming a final judgment is entered by the state court judge, which establishes an excess verdict in an amount more than $75,000 the Defendant would then be entitled to remove the bad faith claim—which would be the only claim pending in the state court action.   And consistent with *Lahey* and *Parks* the one year period to file the notice of removal would not run from the date the original UM action was filed but rather from the date the claim accrued. The thirty day period as well would run from the date the judgment was entered . . . .

*Curran v. State Farm Mut. Auto. Ins. Co.*, No. 6:09-cv-463-Orl-28DAB, 2009 WL 2003157, at \*2-

3 (M.D. Fla. July 2, 2009) (internal citations and footnote omitted); *Jenkins v. Allstate Ins. Co*.,

No. 5:08-cv-285-Oc-10GRJ, 2008 WL 4934030, at \*2-3 & n. 9 (M.D. Fla. Nov. 12, 2008)

(citations in footnotes included in text).[5]   In both of these cases, the plaintiffs had amended their

_____

[5] I note, for purposes of clarity that, although this case was assigned to a different district judge,

complaints to include bad faith claims more a year after the institution of UM litigation, meaning that the defendants were attempting to remove the bad faith claims outside of the thirty-day period that commenced with service of the original UM complaint and beyond the one year limit set forth in § 1447(c)(1) – just as occurred in this case.   Thus, the "separately removable" analysis is presumably controlling, unless the presiding district judge elects to reconsider his position on this legal question.

      ii.    <u>Did Nationwide waive its right to removal by failing to remove within thirty days of service of the UM complaint or within one year of the institution of the UM litigation?</u>

The next question is whether, as Darragh argues, Nationwide waived its right to removal by failing to remove within thirty days of service of the UM complaint (if the UM complaint was initially removable) or within one year of the commencement of the UM litigation (if the UM complaint was not initially removable).   Under the "separately removable" analysis discussed above, Nationwide's bad faith claim amounted to a new "action" and instituted an entirely new time period for removing.   That Darragh's UM claim might have been removable at the outset or that Nationwide is attempting removal more than one year after the commencement of the UM action is not relevant.   *See Moss*, No. 5:10-cv-104-Oc-10GRJ, Doc. No. 14, *adopted by* Doc. No. 22 (denying motion to remand where plaintiff amended complaint to include bad faith claim more than one year after commencement of UM action that would have been removable when filed, but defendant removed bad faith claim within thirty days of filing of the bad faith claim); *Lahey*, 2007 WL 2029334, at *1-2 & n.1 (denying motion to remand where plaintiff amended complaint to include bad faith claim five years after commencement of UM action that would have been removable when filed, but defendant removed bad faith claim within thirty days of the filing of the

_____

the presiding district judge in this case adopted the Report and Recommendation at issue.

bad faith claim); *Parks v. State Farm Mut. Auto. Ins. Co.*, No. 8:06-cv-811-T-26MSS, Doc. No. 13 (M.D. Fla. June 20, 2006) (denying motion to remand where plaintiff amended complaint to include bad faith claim almost two years after commencement of UM action that would not have been removable when filed, but defendant removed bad faith claim within thirty days of the filing of the bad faith action).   *See also Curran*, 2009 WL 2003157, at *1 & n.2 (noting that plaintiff's initial UM claim would have been removable when filed).   Thus, under the "separately removable" analysis, Nationwide did not waive its right of removal by failing to remove within thirty days of being served with Darragh's state court UM complaint, or within one year if Darragh's state court UM complaint was not initially removable, and removal of the bad faith claim is not barred by the one year limitation embodied in § 1447(c)(1).

> iii.   <u>Did Nationwide waive its right to removal by failing to remove the bad faith claim within thirty days of the Final Judgment on the UM claim or within thirty days of Darragh's motion to amend?</u>

The next question, then, is when did the thirty-day window for Nationwide to remove its bad faith claim begin running?   Darragh posits two potential dates – the date the state court entered the Final Judgment on his UM claim in the State Court Action (September 14, 2010) and the date he filed his motion to amend his complaint to add the bad faith claim to the State Court Action (October 4, 2013).   Using either of those dates, Nationwide's Notice of Removal was untimely.   Nationwide contends that the time for it to remove the bad faith claim commenced on the day that the state court judge granted Darragh's motion to amend his complaint and Darragh's amended complaint was filed (January 9, 2014).

Darragh's argument for running the time for removal from the date of the final judgment on the UM claim is not availing.   Darragh's sole support for this argument is the *Curran* case, in which, as mentioned above, this Court stated that the time for the defendant to remove its bad faith claim would run from the date final judgment was entered on plaintiff's UM claim.   *Curran*, 2009

WL 2003157, at *3.   The *Curran* case is, however, distinguishable.   In *Curran*, the state court allowed the plaintiff to amend the complaint to add a bad faith claim *before* the state court entered final judgment on the plaintiff's UM claim.   *Id.* at *2-3.   Because of this, as explained in *Curran*, defendant's attempt to remove the bad faith claim was premature, and the time for removal could not begin to run until the plaintiff's bad faith claim accrued – which, in the *Curran* court's estimation, would be when the state court entered final judgment on the UM claim.   *Id.* at *3.

In the instant case, Darragh did not even move to amend his complaint to add the bad faith claim until more than *three years* after the state court entered final judgment on his UM claim. While Nationwide might have been on notice in September 2010 that Darragh eventually intended to assert a bad faith claim, there simply was no bad faith claim for Nationwide to remove following entry of the Final Judgment on the UM claim in 2010.   Darragh does not cite to any authority holding that a defendant must remove a claim that has accrued but has not yet been filed, and such a holding would appear to be inconsistent with § 1446(b)(1), which provides that, for a newly filed action (which is what the bad faith claim amounts to under the "separately removable" analysis), the notice of removal must be filed within thirty days "after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

Darragh's argument that the time for removal began to run with the filing of his motion to amend the complaint is also not availing.   On this point, Judge Whittemore's rationale in *Lahey* is persuasive.   In *Lahey*, the plaintiffs litigated a UM claim to a jury verdict in state court.   After final judgment was entered, the plaintiffs filed a motion to amend their state court complaint to include a bad faith claim.   The state court granted the motion, and the defendant removed the bad faith claim within thirty days of the state court's order authorizing filing of the amended

complaint, but more than thirty days after the plaintiff filed the motion to amend.   *Lahey*, 2007 WL 2029334, at *1-2.

Judge Whittemore concluded that the defendant's removal would be timely if made within thirty days of receipt of "a copy of the initial pleading setting forth" the bad faith claim pursuant to § 1446(b).   On the facts of the case, he also concluded that the thirty-day window for removal of the bad faith claim commenced on the date the state court allowed the plaintiff to amend, not the date the motion to amend was filed.   In rejecting an argument similar to that made by Darragh, Judge Whittemore reasoned:

> If Plaintiffs' position was correct and notice of Plaintiffs' motion to amend the complaint began the thirty day period, Defendant would be required to remove the bad faith claim to federal court before it was actually filed.   It is illogical to require a defendant to remove a case to federal court before the removable claim is actually filed.   This conclusion is consistent with the rule that the thirty day removal period begins to run from the date of formal service, rather than the date a party receives a courtesy copy of the complaint.

*Id.* at *2.   Although Darragh cites to two cases that arguably could be read to suggest a different result, I find Judge Whittemore's rationale persuasive and recommend that the Court find that the time for Nationwide to remove the bad faith claim began running on January 9, 2014 – the date that the state court granted Darragh's motion to amend and that Darragh's amended complaint was filed.[6]   Nationwide removed the bad faith claim on January 22, 2014, which was within the thirty

---

[6] Darragh also argues that, in this case, the time for removal should run from the date he moved to amend his complaint because the Final Judgment in the State Court Action shows that he had the ability to amend as of right and that it is disingenuous to argue otherwise.   Doc. No. 9 at 9-10.   This argument does not change the conclusion I reach above.   While the Final Judgment reserved jurisdiction to "permit the Plaintiff to amend his Complaint to seek and litigate the issue of bad faith damages," this language does not mean that Darragh was entitled to amend his complaint as of right.   Doc. No. 1-2 at 1.   Indeed, at the hearing on the motion regarding the provisions of the Final Judgment in the State Court Action, counsel for Darragh recognized that his proposed Final Judgment would merely reserve jurisdiction to the state court to entertain the issue of amendment, that Darragh needed leave of the court to amend, and that the state court could have a hearing on any motion to amend, which could be granted or denied.   Doc. No. 12-5 at 8, 11.

day limit.   Accordingly, I recommend that the Court find that Nationwide's removal was timely.[7]

        *b.*     *Waiver Based on Agreement to Litigate Bad Faith Claim in State Court.*

      Separate and apart from his timeliness arguments, Darragh argues that this case should be remanded because Nationwide agreed to litigate the bad faith action in state court by agreeing to the language in the Final Judgment wherein the state court reserved jurisdiction "to permit the [Plaintiff] to amend his Complaint to seek and litigate the issue of bad faith damages from the Defendant due to such jury verdict being in excess of policy limits," Doc. No. 1-2 at 1, and by failing to object to that language on appeal.   Nationwide argues that it did not consent to litigate the bad faith claim in state court.

      It is certainly the case that a defendant can waive the right to removal by its actions in state court.   *Yusefzadeh*, 365 F.3d at 1246.   However, I disagree that Nationwide waived its right to remove on these facts.   First, it is far from clear that Nationwide did, in fact, agree to the quoted language in the Final Judgment.   *See* Doc. No. 12-5 (hearing transcript where counsel for

---

[7] Darragh has not argued that his bad faith claim had not accrued as of the date Nationwide filed its Notice of Removal or that Nationwide's removal was premature.   Nonetheless, because the issue of premature removal was raised in the *Curran* and *Jenkins* cases, I address it briefly here.   First, I note that, under the analysis of the *Curran* and *Jenkins* cases, removal of Darragh's bad faith claim was not premature because the state court had entered a Final Judgment on Darragh's UM claim when Nationwide removed the claim.   Doc. No. 1-2 at 1-2.   Second, to the extent that completion of the appeals process is relevant to the analysis, I note that the Fifth DCA affirmed the state court's Final Judgment, except with respect to approximately $1.5 million in future economic losses.   Because Darragh's UM policy limits were $200,000, this means that the state court's $200,000 judgment in Darragh's favor remains intact, as does more than $2 million of the excess verdict, which may alleviate any ripeness concerns.   *See, e.g.*, *Imhof v. Nationwide Mut. Ins. Co.*, 643 So. 2d 617, 618 (Fla. 1994) (stating that neither *Blanchard* nor section 624.155(2)(b) require the allegation of a *specific amount* of damages and that there is no need to allege an award exceeding the policy limits to bring an action for insurer bad faith), *receded from on other grounds*, *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 63 (Fla. 1995).   Finally, I note that, where a final judgment has been entered on the UM claim but the defendant is appealing that judgment, there is precedent in this district for allowing removal of a later-added bad faith claim and then abating the claim until conclusion of the appeal of the underlying UM action.   *See Moss*, No. 5:10-cv-104-Oc-10GRJ, at Doc. No. 31 (M.D. Fla. Dec. 14, 2010).

Nationwide argued that the bad faith claim should be litigated separately).   Second, even if Nationwide somehow "agreed" to the language of the Final Judgment by failing to object to it on appeal, at most, Nationwide "agreed" to allow the state court to reserve jurisdiction to consider whether to allow Darragh to amend his complaint to include a bad faith claim[8] – which is not equivalent to agreeing to litigate the entirety of the bad faith claim in state court and not attempt removal.

On this point, Darragh's reliance on the state court judge's statements at the hearing on the motion to amend are misplaced.   At the hearing, the state court judge stated, "I think as a general matter . . . , I agree with you and I agree with the Fifth DCA, but the parties in this case contemplated this is how they were going to do it.   This is how they wanted to do it at the time.   Now, of course, you being brought in, you may want to do something different, but the parties, meaning Mr. Darragh and Nationwide decided that this is the procedure that was going to make sense."   Doc. No. 9-21 at 17-18.[9]   This statement must be read in context.   When the entire transcript of the hearing is considered, it is apparent that the state court judge was referring to the parties' alleged agreement to allow Darragh to amend his UM complaint in the state court action to add the bad faith claim, *not* an agreement to keep the bad faith claim in state court and forego any right of removal.   Accordingly, I recommend that the Court find that there is no basis to conclude that Nationwide waived its right to remove the bad faith claim by its alleged agreement to the language of the Final Judgment.

---

[8] As mentioned above, at the hearing regarding the Final Judgment, counsel for Darragh recognized the limited effect of this provision of the Final Judgment – that is, that it simply allowed the state court to retain jurisdiction to decide whether or not Darragh would be allowed to amend his complaint to add the bad faith claim.   Doc. No. 12-5 at 8, 11.

[9] This citation is to the original page numbers of the deposition transcript, not to the page numbers assigned to the document when it was filed in CM/ECF.

4.      Conclusion as to Motion to Remand.

For the reasons stated above, assuming the Court agrees with earlier decisions treating a bad faith claim as "separately removable," I recommend that the Court find that Nationwide's Notice of Removal was timely and that Nationwide did not waive its right to removal by its alleged agreement to the language of the Final Judgment in the State Court Action.   Because there is otherwise subject-matter jurisdiction over the bad faith claim, I recommend that the Court deny Darragh's motion to remand.

B.      *Motion for Attorneys' Fees.*

Because I recommend that the Court deny Darragh's motion to remand, I also recommend that the Court deny Darragh's motion for attorneys' fees.   However, in the event that the Court elects not to adopt my recommendation regarding the motion to remand, I will briefly discuss the merits of Darragh's request for attorneys' fees.

Although 28 U.S.C. § 1447(c) allows courts to make such fee awards when remanding a case, the United States Supreme Court has held that, absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).   "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party," and this determination "should turn on the reasonableness of the removal."   *Id.* at 140-41.   A district court's decision on a motion for attorney's fees under § 1447(c) is reviewed for abuse of discretion.   *See Bauknight v. Monroe Cnty., Fla.*, 446 F.3d 1327, 1329 (11th Cir. 2006).

Here, Nationwide made colorable and reasonable legal arguments for removal based on the authorities and evidence it cited.   There is no binding authority on the "separately removable"

issue, and both parties cited to case law that supported their position.   Indeed, both parties asserted in their briefing that their position represented the current consensus view on the issue. Doc. No. 12 at 7-8, 11, 16; Doc. No. 19 at 1.   Moreover, no evidence suggests that Nationwide removed the case for the purpose of prolonging litigation or imposing costs.   In these circumstances, I recommend that the Court deny Darragh's motion for attorneys' fees even if the Court ultimately concludes that this case should be remanded.

Darragh's arguments to the contrary are not availing.   First, the Eleventh Circuit did not, as Darragh argues, "conclusively [determine] that untimely removal is a strong foundation for fees pursuant to 28 U.S.C. § 1447(c)" in the case of *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888 (11th Cir. 2011).   Doc. No. 10 at 8.   *Taylor* is an unpublished and non-binding case, and regardless, the *Taylor* court merely determined that a district court did not abuse its discretion in awarding fees under § 1447(c) when the defendant lacked an objectively reasonable basis to remove on fraudulent joinder grounds and the untimeliness of the removal made it "even more unreasonable."   *Id.* at 891-94.   It did not determine that every untimely removal is objectively unreasonable or that fees must be awarded even when the law surrounding the timeliness of the removal is unsettled.   Moreover, while Darragh cites to some cases from the Middle District of Florida in which district judges have awarded fees for untimely removals outside of the bad faith context, in many of the cases cited by Darragh on the "separately removable" issue, the court declined to award fees under § 1447(c) because of the conflict in authority on this issue.   *See, e.g.*, *van Niekirk v. Allstate Ins. Co.*, No. 12-62368-CIV, 2013 WL 253693, at *4 (S.D. Fla. Jan. 23, 2013); *Arroyave v. State Farm Mut. Auto. Ins. Co.*, No. 08-14125-CIV-GRAHAM/LYNCH (S.D. Fla. Nov. 18, 2008) (in the record in this case as Doc. No. 9-16); *McCreery v. State Farm Mut. Auto. Ins. Co.*, No. 07-80489-CIV-HURLEY/HOPKINS (S.D. Fla. Sept. 1, 2007) (in the record in this case as Doc. No. 9-17).

Second, even if the Court disagrees with my recommendation and determines that Nationwide waived its right to removal by agreeing to the language of the Final Judgment in the State Court Action, I note that the issue of waiver is not clear-cut and that Nationwide made reasonable arguments in support of its position that it had not waived the right to removal.   On these facts, I recommend that the Court conclude that it was not objectively unreasonable for Nationwide to attempt to remove the bad faith claim.

Accordingly, even if the Court ultimately disagrees with my recommendation and determines that Darragh's bad faith claim should be remanded, I recommend that the Court exercise its discretion and decline to award Darragh fees under § 1447(c).

## V.    RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court **DENY** Plaintiff's Motion to Remand (Doc. No. 9) and **DENY** Plaintiff's Motion for Attorney Fees (Doc. No. 10).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 29, 2014.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy